E-FILED
Thursday, 21 July, 2022 01:29:07 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| GUSTAVO RUVALCABA SANDOVAL, )<br>)<br>Petitioner-Defendant, )<br>)<br>v. )<br>)<br>)<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent-Plaintiff. ) | Case Nos. 18-cr-40067<br>21-cv-4157 |

## ORDER AND OPINION

**SARA DARROW, Chief U.S. District Judge:**

Now before the Court is Petitioner Gustavo Ruvalcaba Sandoval's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (d/e 74). Sandoval argues that he received ineffective assistance of counsel, resulting in a higher sentence than he believes he should have received. For the reasons below, the Court DENIES Petitioner's § 2255 motion (d/e 74), and DECLINES to issue a certificate of appealability.

### I. BACKGROUND

In December 2018, Sandoval and his co-defendant Ryan Mehaffy were charged with conspiracy to distribute, and possess with intent to distribute, at least 50 grams of actual methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). *See* Indictment (d/e 1). On July 31, 2019, Sandoval pled guilty to the charge without a written plea agreement. *See* July 31, 2019 Minute Entry. At the change of plea hearing, Sandoval was represented by Attorney Jeremy S. Karlin. Sandoval testified that he was fully satisfied with the representation

and advice his counsel had given to him, that no one had threatened him in any way or forced him to plead guilty, and that no one had made any promises in order to get him to plead guilty. *See* Plea Tr. (d/e 70) at 4. Sandoval stated he understood that the possible penalties of the offense included a mandatory minimum of ten years and up to life in prison. *Id.* at 5.

Mr. Karlin stated that his "best estimate" of the applicable advisory guidelines range was "a range 135 to 168 months' imprisonment based on a base offense level of 36. There may be other aggravating factors that exist, but we're not sure at this point." *Id.* at 6. Sandoval affirmed that he understood that this only represented counsel's "best estimate" and that the Court would not know what his advisory guideline range was until the presentence investigation report had been prepared and any objections had been resolved. *Id.* at 6-7. He was further reminded that the guidelines are advisory and that his ultimate sentence could be anywhere within the statutory range. *Id.* at 7.

Next, the government recited each of the essential elements it would be required to prove, and Sandoval acknowledged that he understood the elements to which he was pleading guilty. *See* Plea Tr. (d/e 70) at 9-10. Sandoval admitted that he had conspired to distribute at least 50 grams of methamphetamine and that the lab report indicated it was above 90 percent purity. *Id.* at 10-11. Sandoval also acknowledged that he was to receive money for delivering the drugs and that one individual he agreed to distribute drugs with was co-defendant Mehaffy. *Id.* at 12. The government provided an independent factual basis to support the plea. *Id.* at 12-14. The Court then found:

> It is the finding of the Court in the case of the *United States of America vs. Mr. Gustavo Sandoval* that he is fully competent and capable of entering an informed plea, that he is aware of the nature of the charge and the consequences of his plea, and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Your plea is therefore accepted, and you are now adjudged guilty of this offense.

*See* Plea Tr. (d/e 70) at 14.

Next, the United States Probation Office prepared a Presentence Investigation Report in advance of sentencing. The initial Presentence Investigation Report calculated a base offense level of 38 and found that a four-point leadership enhancement applied. PSR (d/e 41) at ¶¶26, 29. After a three-point reduction for acceptance of responsibility, his total offense level was calculated as 39. *Id.* at ¶¶ 33-35. Along with his criminal history category of I, Sandoval's advisory Guidelines Sentence was calculated as 262 to 327 months' imprisonment. *Id.* at ¶83.

Shortly after the initial PSR was prepared, Mr. Karlin withdrew as Sandoval's counsel and Andrew Larson was appointed to represent Sandoval. Mr. Larson filed objections to the PSR, specifically objecting to the leadership enhancement in paragraph 29. *See* Brief in Support of Objections (d/e 42). Attorney Larson subsequently withdrew from the case, and Attorney Andrea Jaeger was appointed to represent Sandoval. *See* Motion to Withdraw (d/e 51); June 9, 2020 Minute Entry (d/e 52).

Attorney Jaeger submitted a sentencing memorandum indicating that the parties had agreed that Sandoval would receive a two-level leadership enhancement under U.S.S.G. § 3B1.1(c), rather than the four-level enhancement under U.S.S.G. § 3B1.1(a), and that no objections remained. *See* Memorandum (d/e 58). The memorandum also requested a downward variance, based on Sandoval's personal characteristics and because of the lack of empirical basis for the sentencing disparities between ice and methamphetamine mixture. *Id.* at 2-13.

At the sentencing hearing on September 22, 2020, defense counsel again stated that the objections had been resolved by agreement. Sentencing Tr. (d/e 71) at 3. The Court then made further edits to Sandoval's PSR at paragraphs 19, 97, and 18. *Id.* at 4-6. Sandoval agreed that he had no objections to the PSR that had not been raised. *Id.* at 6. The Court determined Sandoval

had an advisory guideline range of 210 to 262 months of imprisonment based on a total offense level of 37 and a Criminal History Category of I. *Id.* at 8. The Court adopted the second revised PSR and incorporated it into the record. *Id.* at 9.

The government requested a within guidelines sentence of 210 to 262 months. The government cited the scale of the conspiracy which involved over 13 kilograms of ice methamphetamine and three kilograms of marijuana. Sentencing Tr. (d/e 71) at 12. The government noted that Sandoval was a leader/organizer and had cartel connections. *Id.* at 12-15.

Defense counsel began her commentary by highlighting Sandoval's mitigating personal background and circumstances. *Id.* at 17-19. Counsel stressed Sandoval's lack of significant criminal history, as he only had one criminal history point. *Id.* Sandoval's counsel asked the Court to "vary downward significantly" from the guidelines. As in her sentencing commentary, counsel argued that the sentencing guidelines' disparity in calculations for ice verses mixtures of methamphetamine was not based on sound policy and that it unjustifiably increased Sandoval's guidelines range. *Id.* at 19-23.

The Court then sentenced Sandoval to 210 months of imprisonment, followed by five years of supervised release. *Id.* at 41. In reaching this sentence, the Court considered the seriousness of the offense, noting that over 13 kilograms of methamphetamine were involved and that, as a leader/organizer of the conspiracy, Sandoval utilized sophisticated techniques to achieve the cross-country nature of the operation. The Court also considered that Sandoval had employed threats against a customer and that the evidence supported the supply coming from a cartel. *See* Sentencing Tr. (d/e 71) at 33-34. The Court also addressed Sandoval's personal history and characteristics, referencing the positive aspects of Sandoval's situation — his family support, his children relying on him, his minor criminal history, employment background and

age. *Id.* at 37-38. The Court noted Sandoval's alcohol abuse and the need for specific and general deterrence from a sentence. *Id.* at 39-41. The written Judgment was entered on September 25, 2020. *See* Judgment (d/e 59).

Sandoval filed a direct appeal, but Sandoval's counsel filed a brief pursuant to *Anders v. State of Cal.,* 386 U.S. 738, 744 (1967), and a motion to withdraw. *See United States v. Sandoval,* Case No. 20-2861 (7th Cir.), #9. On January 5, 2021, Sandoval filed a *pro se* document with numerous arguments that he wanted considered by the Seventh Circuit:

> A. Claims that co-defendant Mehaffy was not truthful in his statements given to investigators;
>
> B. Claims that Garcia introduced Mehaffy to Sandoval as someone who wanted to buy drugs to take to Illinois;
>
> C. Claims he should have received a variance because he was assaulted by the agents who arrested him;
>
> D. Claims he should not have received the leader/organizer enhancement at sentencing; and
>
> E. Claims of ineffective assistance of counsel.

*See* Seventh Circuit Docket #20-2861, #14, #15.

On May 6, 2021, the Seventh Circuit granted counsel's motion to withdraw and dismissed the appeal. *See United States v. Sandoval*, 846 F. App'x 407 (7th Cir. 2021). The Seventh Circuit found that Sandoval could not make a non-frivolous challenge to his guilty plea and that the district court had complied with Rule 11 of the Federal Rules of Criminal Procedure. *Id.* at 408. The Seventh Circuit found that Sandoval's sentence was procedurally correct and substantively reasonable. *Id.* at 408-409. While the Seventh Circuit noted that Sandoval proposed "challenging the factual basis for that enhancement because, he says, his co-defendant lied about his role in the offense," the Seventh Circuit found that Sandoval had "explicitly agreed

to the enhancement in a sentencing memorandum and again at sentencing, so he waived any right to appeal its application." *Id.* at 408. Finally, the Seventh Circuit found that Sandoval's claims of ineffective assistance of counsel would be better addressed in a collateral proceeding so a more complete record could be developed. *Id.* at 409.

Next, Sandoval filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 74) on September 20, 2021. He argues that his attorneys rendered ineffective assistance of counsel that resulted in him getting a higher sentence. The government filed a response (d/e 77). Sandoval has now filed a reply (d/e 78). After careful consideration, this order now follows.

## II. LEGAL STANDARD

Section 2255, "the federal prisoner's substitute for habeas corpus," *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012), permits a prisoner incarcerated pursuant to an Act of Congress to request that his sentence be vacated, set aside, or corrected if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is appropriate for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quotation marks omitted). However, a "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States,* 538 U.S. 500, 509 (2003).

Sandoval's claims arise under the Sixth Amendment. The Sixth Amendment guarantees criminal defendants effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). Under *Strickland's* two-part test, a petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 690. A petitioner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado,* 936 F.2d 303, 311 (7th Cir. 1991).

## III. DISCUSSION

Sandoval alleges he received ineffective assistance of counsel throughout his criminal proceedings. He asserts that he believed he would only receive a sentence of 132 months imprisonment if he pled guilty, and that his counsel was ineffective because she failed to allow him to withdraw his guilty plea and failed to successfully reduce the sentencing guidelines calculations. However, as explained below, the Court finds that Sandoval has not shown that any of these allegations amounted to deficient conduct or that he was prejudiced as a result.

**A. Sandoval Did Not Receive Ineffective Assistance of Counsel Due to Counsel's Inaccurate Sentencing Guidelines Estimate.**

Proceeding chronologically through Sandoval's case, the Court first turns to Sandoval's claim that his original lawyer, Mr. Karlin, was ineffective because the sentencing estimate he gave at the time of the plea hearing was significantly lower than his actual sentencing guidelines

range. The Sixth Amendment right to counsel extends to the plea-bargaining process. *Bridges v. United States*, 991 F.3d 793, 803 (7th Cir. 2021). "In the plea bargaining context, a reasonably competent lawyer must attempt to learn all of the relevant facts of the case, make an estimate of the likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." *Brock-Miller v. United States,* 887 F.3d 298, 308 (7th Cir. 2018). Mistakes, nor omissions, in an attorney's advice do not necessarily constitute ineffective assistance of counsel. *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002). "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366 (1970); *see also Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). The defendant must also show that to reject the plea agreement and go to trial would have been rational under the circumstances. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *see also, Lee v. United States*, 137 S. Ct. 1958, 1968 (2017) ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preference.").

Here, Sandoval claims that Mr. Karlin told him he would receive a sentence of 132 months if he pled guilty. This argument is factually foreclosed by the record of the plea hearing. At the change of plea hearing, Mr. Karlin stated that his "best estimate" of the applicable advisory guidelines range was "a range 135 to 168 months' imprisonment based on a base offense level of 36. There may be other aggravating factors that exist, but we're not sure at this point." *See* Plea Tr. (d/e 70) at 6. The Court confirmed that Sandoval knew that this range was only an estimate and that the actual advisory sentencing guidelines range would not be known

until the presentence investigation report was prepared and objections were resolved. *Id.* Further, the Court confirmed that Sandoval knew that the Court was not bound by that range and that his "ultimate sentence might be within that range, below that range or above that range, keeping in mind it can't be below the ten-year mandatory minimum." *Id.* at 7. The Court is generally permitted to rely on Sandoval's representations at his plea hearing and Sandoval has not advanced any compelling reason to believe he did not understand that counsel's estimate was only an estimate when he said he did under oath at the plea hearing. *See Thompson v. United States*, 732 F.3d 826, 829-30 (7th Cir. 2013); *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Accordingly, Sandoval's claim that his attorney told him he would receive a 132-month imprisonment sentence without the understanding that it was an estimate is refuted by the plea record.

Moreover, Sandoval has not shown that counsel's estimate was unreasonable. Counsel's estimate assumed a total offense level of 33 after a three-point reduction for acceptance of responsibility. As it turned out, Sandoval's base offense level was two points higher than counsel estimated and an aggravating factor did exist: Sandoval qualified for a two-point leadership enhancement. This bumped his total offense level to 37 and resulted in an advisory guideline range of 210 to 262 months of imprisonment. While counsel's estimate was lower than the ultimate sentence, counsel explicitly considered and stated at the change of plea hearing that aggravating factors may exist that could increase his sentence.

Moreover, Sandoval has not presented any reason to believe that he would not have pled guilty despite counsel's incorrect estimate—making him unable to show prejudice. He does not advance any reason why he believes he could have been acquitted at trial, or why it otherwise would have been worth the risk of losing the three-point reduction for acceptance of

responsibility by proceeding to trial. While Sandoval might believe that at trial he would have been able to show that his co-defendant was lying and that the leadership enhancement would not apply, any such benefit would have been outweighed by the risk of losing his acceptance of responsibly points and, as discussed below, the possibly of a higher base offense based on his version of events. Accordingly, the Court finds that the record refutes Sandoval's claim that his attorney was ineffective in his pre-plea sentencing guidelines estimate.

### B. Sandoval's Counsel Was Not Ineffective for Refusing to File a Motion to Withdraw his Guilty Plea.

Sandoval next argues that he wanted to withdraw his plea, but his counsel told him he was not allowed. He alleges he wanted to see his discovery file, that he could prove his co-defendant was lying, that he had witnesses to prove his co-defendant was lying, that the leadership role was not right. Sandoval's motion does not coherently state sufficient details to show what advice his counsel gave him that he considers defective. He does not state what he believes was in his discovery file that would have been useful, how he could prove his co-defendant was lying, or to what the witnesses would have attested. Counsel's affidavit, however, gives some context: Counsel states that she had multiple discussions with Sandoval regarding withdrawing his plea, why it would not likely have been granted, and how it would certainly have resulted in a worse outcome at trial. *See* Jaegar Affidavit (d/e 77-1) at 6-7. Counsel also discussed Sandoval's version of the facts with him and why he believed government witnesses were lying. *Id.* The government was included in some of these discussions and found its witnesses to be credible. *Id.* at 7. Regardless, the government found that because Sandoval had already admitted his factual guilt by pleading guilty, the details he disagreed with were immaterial and did not impact his sentencing guidelines. Counsel also noted that Sandoval's

version of events involved a higher drug quantity than known by the government and attributed to him in the PSR.  *Id.*  She states that persisting in his version of events would have subjected him to a higher guidelines range.  *Id.*  Counsel states that as a strategic matter she advised Sandoval not to persist in this factual dispute given "the lack of any legal impact, the likelihood of negative consequences which would place [Sandoval] in a worse position and likely lead to a longer sentence, and the lack of evidence to support [Sandoval's] assertions in a matter which could overcome the low standard of proof."  *Id.* at 7.  And Sandoval agreed with this strategy.  *Id.*

Sandoval's reply generally states that he believes Ms. Jaegar is lying.  Sandoval insists that Ms. Jaegar told him he could not withdraw his guilty plea, but a previous lawyer said he could.  Either way Sandoval would not have been successful in withdrawing his guilty plea, so any misstated law by Ms. Jaeger was not prejudicial.  A defendant may withdraw a plea of guilty after a court accepts the plea but before imposition of the sentence if the defendant can show a "fair and just reason" for withdraw.  Fed. R. Crim. P. 11(d)(2)(B).  However, the right is not absolute, and, as here, when a defendant "wishes to withdraw his plea after he states at a Rule 11 hearing that it was given freely and knowingly, "he faces an uphill battle in persuading the judge that his purported reason ... is 'fair and just.'"  *United States v. Salgado-Ocampo*, 159 F.3d 322, 324–25 (7th Cir. 1998), *as amended* (Nov. 4, 1998).

Here, Sandoval claims he sought to withdraw his plea agreement because he did not know that his co-defendant would implicate him as a leader in the conspiracy.  Because his co-defendant did so, his sentencing guidelines range was higher and it ultimately led to a higher sentence than he expected.  However, the Seventh Circuit has held that a defendant can offer a knowing and voluntary plea without having received and reviewed full discovery from the

government.  *See United States v. Williams*, No. 18 CR 602, 2021 WL 5578751, at *3 (N.D. Ill. Nov. 30, 2021) (citing *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016); *see also U.S. v. Underwood,* 174 F.3d 850, 853-854 (7th Cir. 1999) (rejecting argument that a defendant "should be able to take back his guilty plea if, after learning what evidence the government had available for trial, [the defendant] takes the position that the government's evidence against him is false"); *United States v. Seybold,* 979 F.2d 582, 587 (7th Cir. 1992) (Rule 11 "does not require the trial judge at the plea hearing to air all of the government's evidence")).  While Sandoval might not have known that his co-defendant would later claim he was the leader, this alone is insufficient to show a "fair and just" reason for withdraw.  Accordingly, the Court finds that even if Ms. Jaegar did tell him specifically that he cannot withdraw his plea (not just that it would be unlikely to succeed), this advice did not cause him any prejudice.

    **C.  Sandoval Did Not Receive Ineffective Assistance of Counsel at Sentencing.**

Finally, Sandoval has advanced various reasons why he would have received a lower sentence had Ms. Jaegar provided better representation.  First, Sandoval argues that Ms. Jaegar, should have presented his claims that law enforcement used excessive force on him to the Court.  Sandoval does not explain what benefit he believed he would receive by bringing these claims to the Court in his criminal proceeding rather than a separate civil rights action.  *See also, United States v. Shaffier*, 722 F. App'x 582, 585 (7th Cir. 2018) (allegations regarding pre-trial detention treatment "are more appropriate for a civil lawsuit than a direct appeal from his criminal conviction.").  In his reply, Sandoval writes that he read in a book called "Busted by the Feds" that he can get time off for getting injured at the time of his arrest.  *See* Reply (d/e 78) at 3.  However, there is no general legal basis that would make this true.  There is nothing in the sentencing guidelines that would warrant a departure based on arrest-related injuries.  And, while

the § 3553 sentencing factors require courts to consider the defendant's medical needs when crafting a sentence, *see* 18 U.S.C. § 3553(a)(2)(D), Sandoval has not indicated that he had any ongoing relevant medical needs from any arrest-related injuries that would have impacted his imprisonment sentence. Accordingly, Sandoval has not shown that defense counsel's advice to focus on other mitigating factors in her sentencing commentary was deficient.

Moreover, in counsel's affidavit, she states that after discussing the issue multiple times, Sandoval told his counsel that "he wanted to let this issue go, he did not want to mention this issue, and he wanted to focus on his future plans as his basis for allocution." Jaegar Affidavit (d/e 77-1) at 5. While Sandoval argues that his former counsel generally lied in her affidavit, he did not state she was lying about this statement. And Sandoval chose not to mention the allegations in his allocution, despite that option remaining available to him. Accordingly, the Court finds that counsel's advice to not raise his excessive force claim in his criminal proceeding was neither deficient nor prejudicial.

Next, Sandoval argues that counsel failed to object to the leadership enhancement at sentencing. This objection was largely addressed above with regards to Sandoval's claim that he should have been able to withdraw his plea. Again, Sandoval does not elaborate on the basis for his objection to the application of this enhancement (other than his argument that his co-defendant was lying in his previous ground). Moreover, the record shows that counsel *did* object to the leadership enhancement and obtained governmental agreement for a two-level enhancement instead of a four-level enhancement. At the sentencing hearing Sandoval confirmed that he had no further objections.

The Court also notes that, as further expressed in his reply, at the root of Sandoval's 2255 challenge is his belief that his co-defendant was lying and that, as a result of these lies, his co-

defendant got a lower sentence than he deserved, and Sandoval received a higher sentence than he deserved. However, Sandoval has not disputed that his version of events would have led to him being held accountable for a higher drug quantity. Sandoval takes issue with the statement that his counsel and the government allegedly made that "it doesn't matter if [Sandoval's co-defendant] was lying." From the record, however, this statement likely only meant that whether the co-defendant was lying did not matter *to Sandoval's sentencing guidelines calculation.* At best, if Sandoval's version of events is true, perhaps Sandoval's co-defendant received a sentence lower than what he should have received. Sandoval has not shown that persisting in trying to show his co-defendant was lying could have resulted in a lower sentencing range *for Sandoval.* Nor has he provided any actual evidence that his co-defendant was lying (or even details on what those alleged lies were or a summary of Sandoval's "version of events"). Sandoval has not shown that his attorney was ineffective for mitigating against the risk of the Court finding the higher enhancement applies and/or the risk of a higher base offense level by negotiating with the government for a lesser enhancement.

Lastly, Sandoval argues that his attorney should have argued for the application of the safety-valve reduction. However, there were no non-frivolous arguments that counsel could make that he would have qualified for the safety-valve. For qualifying offenses, the safety-valve provision under 18 U.S.C. § 3553(f)(1) requires the Court to impose a sentence "without regard to any statutory minimum sentence" if the Court finds at sentencing that the requirements of § 3553(f)(1)-(5) are met. While Sandoval was convicted of a qualifying offense and met some safety valve requirements, he did not qualify for the safety valve for three reasons: (1) he used credible threats of violence in connection with the offense (§ 3553(f)(2)); (2) he received a leadership enhancement (§ 3553(f)(4)); and (3) he failed to provide complete cooperation with

the government and had allegedly lied in his proffer efforts (§ 3553(f)(5)).  While Sandoval argues that he should not have gotten the leadership enhancement and insists that he was not the one lying to the government, he does not dispute that he used credible threats of violence in connection with the offense.  Accordingly, the Court finds that Sandoval's counsel was not ineffective for failing to make a frivolous argument.  *See United States v. Evans*, 92 F.3d 540, 544 (7th Cir. 1996) (counsel's refusal to make frivolous argument "can never be a ground for arguing ineffective assistance of counsel"); *Carpenter v. United States*, 492 F. Supp. 2d 912, 922 (N.D. Ill. 2007).  Sandoval's claim of ineffective assistance of counsel at sentencing, therefore, must be denied as well.

## IV.  EVIDENTIARY HEARING

An evidentiary hearing is not always necessary in § 2255 cases.  *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001).  However, "[a] hearing is required unless the record conclusively shows that the movant is not entitled to relief."  *Hicks v. United States*, 886 F.3d 648, 650 (7th Cir. 2018); 28 U.S.C. § 2255(b).  Here, the Court finds that an evidentiary hearing because, assuming his factual claims are true, Sandoval is still not entitled to relief.

## V. CERTIFICATE OF APPEALABILITY

If Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability.  *See* 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability).  A certificate of appealability may issue only if Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and*

about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court does not find that reasonable jurists could disagree that Petitioner's claims are meritless. Accordingly, the Court declines to issue a certificate of appealability.

## VI.  CONCLUSION

For the reasons stated, the Court DENIES Petitioner Sandoval's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (d/e 74). The Court DECLINES to issue a certificate of appealability and declines to hold an evidentiary hearing. The Clerk is DIRECTED and enter the Judgment in favor of Respondent and close the accompanying civil case, 21-cv-4157. This case is CLOSED.

Signed on this 21st day of July 2022.

                                            */s/ Sara Darrow*
                                            Sara Darrow
                                            Chief United States District Judge